REISSUED FOR PUBLICATION
AUG 28 2017
OSM
U.S. COURT OF FEDERAL CLAIMS

ORIGINAL

FILED
JUL 21 2017
OSM
U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| BRUCE A. LING Jr., | * | |
| | * | No. 14-1017 |
| Petitioner, | * | Special Master Christian J. Moran |
| | * | |
| v. | * | Filed: July 21, 2017 |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Influenza ("flu") vaccine; failure to prosecute; insufficient proof |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * *

Bruce A. Ling, Jr., Tallahassee, FL, pro se;
Amy P. Kokot, United States Dep't of Justice, Washington, DC, for respondent.

## UNPUBLISHED DECISION DENYING COMPENSATION[1]

Bruce Ling filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–10 through 34 (2012). His petition alleged that the influenza vaccine administered to him on November 8, 2011, caused him to suffer an adverse reaction, manifested as a fever, light-headedness, difficulty breathing, heart fluttering, and left side jaw clenching. Pet., filed Oct. 20, 2017, at 1. Both parties have completed the development of evidence. The information in the record does not show entitlement to an award under the Program.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

## I. Procedural History

Mr. Ling filed this case pro se and has remained pro se.[2] His status as a pro se litigant has been taken into account, especially with respect to searching the medical records for notations that could support his case.

Throughout this litigation, Mr. Ling has filed medical records as exhibits.[3] Besides medical records, some exhibits concern the more general proposition that vaccinations can cause some types of injuries. Exhibits 8-9. Mr. Ling also filed affidavits from his two brothers and his caregiver.[4]

The Secretary reviewed the information Mr. Ling had presented, and recommended that compensation be denied because Mr. Ling had not met his burden of proof. Specifically, in the Secretary's view, none of the treating doctors stated that the flu vaccine harmed Mr. Ling and Mr. Ling had not provided a report from an expert. Respondent's Report, filed March 9, 2015, at 10.

Mr. Ling was directed to obtain a report from an expert. To facilitate this process, the undersigned set forth the minimum topics on which an expert needed to opine. Order, issued June 2, 2015.

Mr. Ling did not submit a report from an expert retained for this litigation. In lieu of an expert report, Mr. Ling attempted to use a subpoena to compel the production of evidence. Eventually, on January 3, 2017, Mr. Ling filed a motion for a hearing. The Secretary opposed this motion and requested a ruling on the record. Resp't's Cross-Mot. and Resp., filed Feb. 16, 2017. Mr. Ling had the last word by filing a brief on March 10, 2017, and an affidavit from his brother on April 14, 2017.

---

[2] A request for medical records indicates one attorney worked for Mr. Ling. Exhibit 2 at 13.

[3] The most important set of records comes from the Florida Department of Corrections. Mr. Ling filed these records on January 7, 2015, and labeled them "supplemental records." Citations to this "supplemental exhibit" will be to the PDF page.

[4] Mr. Ling did not assign exhibit numbers to these affidavits. However, the affidavits were also reviewed.

2

## II. Summary of Medical Records

In total, Mr. Ling filed approximately 1,000 pages of material. The undersigned has reviewed all of it. The bulk of the material comes from the time when Mr. Ling was in prison.

The records show Mr. Ling complained about many things being wrong with him many times. Usually, but not always, medical staff at the prison could not find any objective basis for Mr. Ling's complaint. When the medical staff did not respond how Mr. Ling thought the medical staff should respond, he made another complaint. This generated more paperwork, extending a cycle. Supplemental exhibit at PDF 220; supplemental exhibit at PDF 440.

While in prison and in this litigation, Mr. Ling complained that the prison's medical staff was not caring for him properly. This charge is not necessarily fanciful in a general sense as Florida has had problems meeting its duty to people who are incarcerated. See Costello v. Wainwright, 430 U.S. 325, 326 (1977), rev'g 539 F.2d 547 (5th Cir. 1976) (en banc), reinstat'g 525 F.2d 1239 (5th Cir. 1976), aff'g 397 F. Supp. 20 (M.D. Fla. 1975). Thus, Mr. Ling's suggestion of systemic errors in medical records cannot be – and were not – dismissed out of hand.

Mr. Ling, however, failed to present any evidence that he specifically was mistreated. First, he presented no evidence from a doctor who questioned the care that he received while in prison. Second, Florida provided Mr. Ling with necessary medical care for serious health problems, such as an infected toe in 2009 and a urologic problem in 2013. Supplemental exhibit at PDF 474-94, PDF 102. Third, and most importantly, after Mr. Ling's release from prison, medical providers unaffiliated with the Florida correctional facilities also failed to find any verifying medical problems. See, e.g., exhibit 1 at 14. If these doctors, whose loyalty seems to be to Mr. Ling only, cannot match his subjective symptom to an objective sign, then Mr. Ling's credibility is diminished. For these reasons, Mr. Ling has not rebutted the generally accepted principle that when medical records describe events occurring close in time to when the medical records were created, the medical records are accurate. See Cucuras v. Sec'y Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The medical records show that Mr. Ling was born in 1976, and stopped attending school after completing the tenth grade. Exhibit 1 at 37. In June 1997, he went to prison. Supplemental exhibit at PDF 500, 608. During this incarceration, he reported joint pain. Id. at 540. He also declined a mumps-

3

measles-rubella vaccination. Supplemental exhibit at PDF 505, 570. After serving time, he was released.

Mr. Ling returned to custody of the Florida Department of Corrections in 2006. Supplemental exhibit at PDF 301 (initial intake screening form). Mr. Ling informed a psychiatrist that he had a history of depression and anxiety. Supplemental exhibit at PDF 207 (September 14, 2006).

In the summer of 2011, Mr. Ling experienced problems when urinating. Supplemental exhibit at PDF 355. On September 7, 2011, Mr. Ling stated that since his last health evaluation, he has had "'same issues -- freq urination, being tired.'" Id. at PDF 78. Around this time – still before vaccination – Mr. Ling reported back pain. Id. at PDF 349. An X-ray from November 4, 2011 showed that his lumbar spine was not remarkable. Id. at PDF 191.

A nurse administered the flu vaccine on November 8, 2011. Supplemental exhibit at PDF 346. Although a form indicated that Mr. Ling had consented to this vaccination, Mr. Ling later stated that he signed the informed consent form after the vaccination. Petition at 1 ¶ 3; supplemental exhibit at PDF 252, 262.

After the flu vaccination, Mr. Ling complained about health problems often. For example, on November 13, 2011, he said that on November 11, 2011 (three days after vaccination), he felt light-headed and had difficulty breathing. Supplemental exhibit at PDF 273. The Department of Corrections transferred him from one location to another, where he went to a doctor's clinic. On November 14, 2011, however, Mr. Ling reported "no chest pains, no dizziness." Supplemental exhibit at PDF 345. The doctor stated Mr. Ling might have hypertension. Exhibit 2 at 14.

On November 25, 2011, Mr. Ling reported weakness in his arms. Supplemental exhibit at PDF 339. On November 30, 2011, Mr. Ling reported having "knots" on his head and neck. The medical staff advised Mr. Ling to continue taking his medications and educated him on anxiety and stress. Id. at PDF 457. On December 2, 2011, the medical staff followed a protocol for complaints of shortness of breath. Id. at PDF 455. On December 7, 2011, Mr. Ling said he felt irritated for not being treated adequately. Id. at PDF 440. On December 12, 2011, various laboratory tests came back normal. Id. at PDF 492-93. Mr. Ling underwent an X-ray of his cervical spine on December 21, 2011. The result was normal. Id. at PDF 189.

By January 2012, Mr. Ling's requests for medical assistance and complaints about his health were becoming more elaborate. Mr. Ling now suggested that he suffered from chronic fatigue syndrome. But, no doctor reached this diagnosis. E.g. supplemental exhibit at PDF 265. He told one treater that he had suffered from chronic fatigue syndrome all his life. Supplemental exhibit at PDF 438 (January 26, 2012).

Throughout 2012, Mr. Ling complained frequently of a variety of health issues, including post-traumatic stress, difficulty breathing, and numbness in arms and legs. Supplemental exhibit at PDF 244, 246. He suggested that the November 2011 flu vaccination was responsible for them. Supplemental exhibit at PDF 252-53; id. at PDF 53 (duplicated at exhibit 2 at 7); supplemental exhibit at PDF 235.

This pattern of complaints continued in 2013. Failing to receive the medical care he expected, he sought assistance from mental health specialists. Supplemental exhibit at PDF 197, 200, 205 (duplicated at id. at 209).

Mr. Ling was released from prison in October 2013. At his first medical appointment following his release, Mr. Ling recounted his concern that the flu vaccine injured him, especially with respect to chronic fatigue. Exhibit 1 at 38; supplemental exhibit at PDF 40; see also exhibit 1 at 6 (duplicated at supplemental exhibit at PDF 9).

In the follow-up appointment one month later, he complained about almost every system in his body. The doctor's plan stated that Mr. Ling "needs psychiatric care." Exhibit 1 at 29 (duplicated at supplemental exhibit at PDF 32). Similarly, in April 2014, the doctor commented that Mr. Ling was "fixated on [the] flu shot." Exhibit 1 at 20 (duplicated at supplemental exhibit at PDF 23).

In June 2014, Mr. Ling started receiving mental health services at Apalachee Center. In the context of giving a history, Mr. Ling stated that he had been anxious all his life. Exhibit 7 at 3-6.

On April 24, 2015, Mr. Ling saw a neurologist, Annet Ella Falchook. Dr. Falchook could not verify a vaccine injury. She recommended an EMG if Mr. Ling could pay for it. Exhibit 5 at 8. Mr. Ling had an EMG the next day and the EMG was negative. Id. at 1, 4.

## III.   Analysis

Mr. Ling is pursuing two types of relief. Primarily, he seeks a ruling that he is entitled to compensation. Secondarily, he seeks various procedural remedies. For the reasons explained below, Mr. Ling has not established that he is entitled to any of the relief that he seeks.

### A.   Entitlement

In creating the Vaccine Program, Congress distinguished between, on the one hand, a petitioner's beliefs and, on the other hand, opinion expressed by trained professionals in the form of "medical records" or "medical opinion." 42 U.S.C. § 300aa–13(a)(1). This distinction matters because although the record contains numerous examples of Mr. Ling saying the flu vaccine harmed him, a special master may not award compensation "based on the claims of a petitioner alone." Id.

To prevail, Mr. Ling needed some evidence from a medical expert that the November 2011 flu vaccination harmed him. A review of hundreds of pages of medical records has not uncovered any supporting opinions. The problems that seemed to arise in November 2011 such as light-headedness and difficulty breathing lasted for a short amount of time. See supplemental exhibit at PDF 345. For conditions that Mr. Ling suggested lasted for a longer amount of time (such as chronic fatigue syndrome), Mr. Ling provided histories that suggested his condition existed before the vaccination. In any event, no doctor has offered an opinion suggesting a causal relationship between the vaccination and any illness. Thus, Mr. Ling has not met his burden to supply reliable evidence supporting his claim.[5]

### B.   Procedural Requests

In diverse documents, Mr. Ling has proposed different avenues which, he believes, could lead to evidence helpful to his case. For example, Mr. Ling would like authority to subpoena doctors who treated him to compel their testimony. However, Mr. Ling does not require a court order to communicate with his doctors.

---

[5] Because Mr. Ling did not submit "medical records" or "medical opinions" supporting his claim that the flu vaccine injured him, the analysis ends. If Mr. Ling had obtained any medical opinions, the expert would have had to present an opinion that satisfies the minimal criteria listed in Althen v. Sec'y Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

6

In fact, multiple medical records suggest that Mr. Ling raised his belief of a vaccine injury with the doctors, but the doctors have not endorsed Mr. Ling's view. Some doctors have gone further and questioned the existence of any injury in Mr. Ling. Thus, compelling testimony from a treating doctor is neither reasonable nor necessary. See 42 U.S.C. § 300aa–12(d)(3)(B) (setting forth the standards for discovery in the Vaccine Program); see also Andreu v. Sec'y Health & Human Servs., 569 F.3d 1367, 1383 (Fed. Cir. 2009) (indicating that special masters should not routinely compel the testimony of treating doctors).

Similarly, Mr. Ling's request for a hearing is also denied. Special masters enjoy discretion in deciding whether to hold hearings. 42 U.S.C. § 300aa–12(d)(3)(B)(v); Vaccine Rule 8(d); D'Tiole v. Sec'y of Health & Human Servs., No. 15-085V, 2017 WL 2729570, at *12 (Fed. Cl. Mar. 2, 2017) (ruling special master was not arbitrary in declining to hold a hearing), appeal docketed, No. 2017-1982 (Fed. Cir. May 04, 2017). Here, a hearing is not necessary. Although Mr. Ling could testify, the record already contains his perspective as documented in his requests for medical attention in prison and complaints to doctors. The records confirm Mr. Ling's belief that the flu vaccination harmed him and that his belief is sincere. His sincerity, however, is not in dispute. The dispute lies in the lack of medical evidence supporting Mr. Ling's allegations. Conducting a hearing to allow Mr. Ling to testify would not fill this gap.

Mr. Ling's final proposal is a request for the special master to use inquisitorial powers to have a medical expert perform an examination. See Pet'r's Mot. for a Hearing, filed Jan. 3, 2017, at 2. Mr. Ling contends his case is unique in that he was in prison and his current disability prevents him from earning income to pay for an expert. Regardless of Mr. Ling's financial circumstances and regardless of the reasons underlying those financial circumstances, special masters cannot order the production of studies that do not already exist. Schneider v. Sec'y Health & Human Servs., 64 Fed. Cl. 742, 746 (2005).

## IV.  Conclusion

Inside and outside prison, Mr. Ling has told many doctors that he believes the flu vaccine harmed him. However, the doctors have not substantiated his belief. In this litigation, Mr. Ling has had many months to obtain a report from an expert he retained or from any of his treating doctors, but he has not. There is a gap between Mr. Ling's beliefs and the medical records. Accordingly, he has not met his burden of proof. His claim is denied.

The Clerk's Office is instructed to enter judgment in accordance with this decision. The Clerk's Office is further instructed to send this decision to Mr. Ling.

**IT IS SO ORDERED**.

Christian J. Moran
Special Master